**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANGELA JONES,

    Plaintiff,

v.                                              Case No. 3:18-cv-1522-J-34JBT

LOLA JUDITH JONES,

    Defendant.
_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 56; Motion), filed on February 19, 2020. On March 11, 2020, Defendant filed a response in opposition to the Motion. See Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment with Incorporated Memorandum of Law (Doc. 72; Response). In support of her Motion, Plaintiff Angela Jones has submitted three depositions. See Notice of Filing Deposition Transcript of Lola Jones (Doc. 57); Notice of Filing Deposition Transcript of Brianna Onorato (Doc. 58); Notice of Filing Deposition Transcript of Elmer Bruton (Doc. 59); Notice by Angela Jones re 57 Notice (Other) (Doc. 61). Defendant did not submit any additional evidence in opposition to Plaintiff's Motion. Accordingly, this matter is ripe for review.

**I.**     **Facts[1]**

On the evening of March 6, 2017, Plaintiff Angela Jones was driving south on Interstate 95 (I-95) in Duval County, Florida. See December 12, 2019 Deposition of Elmer

---

[1] The Court recounts the facts in the light most favorable to Defendant, the party opposing summary judgment. Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995).

Bruton (Doc. 59-1; Bruton Dep.) at 8:6, 9:1-8, 11:17-18. Plaintiff's father, Mr. Elmer Bruton, was a passenger in her vehicle. See id. at 9:1-8. The pair initially travelled south at a normal pace, in an amount of traffic that Mr. Bruton described as "good," i.e. "moving." See id. at 9:17-24. However, once Plaintiff and Mr. Bruton passed the "8th Street exit," the traffic slowed and came to a stop. See id. at 10:6-15; 11:17-24. According to Mr. Bruton, the stopped traffic preceded Plaintiff for "a pretty good distance." See id. at 13:14-19. In response to the preceding traffic, Plaintiff slowed her vehicle and stopped. See id. 10:13-15. From there, Plaintiff "inched forward," keeping with the preceding traffic for several minutes. See id. at 11:17-12:4.

Meanwhile, Defendant Lola Jones also was driving south on I-95, some ways behind Plaintiff and Mr. Bruton. See January 7, 2020 Deposition of Lola Judith Jones (Doc. 61; Defendant Dep.) at 12:15-19, 16:21-25, 21:1-4. At roughly 6:30 p.m., Defendant saw in the distance a sign for Lake City and began changing lanes in anticipation of taking the upcoming exit towards Lake City. See id. at 21:1-7; 22:4-17. First, Defendant changed from the right to the middle lane while watching the traffic, which she described as flowing normally.[2] See id. More specifically, Defendant testified that traffic was moving at speeds "from 40 to 50" miles per hour before she began to switch lanes. See id. at 22:7-10. Defendant then looked in her rearview mirror and began to enter the leftmost lane—still pressing the accelerator. See id. at 21:5-11. Before fully moving into the leftmost lane, she saw a "red light" in front of her and began braking. See id. Despite braking as hard as she could, Defendant testified that she did not have enough space to stop her vehicle,

---

[2] Although Plaintiff and Defendant differ somewhat in their descriptions of traffic conditions before the accident, for the purposes of summary judgment the Court credits the testimony of the Defendant, as the non-moving party. Haves, 52 F.3d at 921 (citation omitted).

so she braced herself before colliding with the rear of Plaintiff's vehicle. See id. at 21:8-11, 23:9-22, 24:25-25:22. Defendant testified that she had fully entered the leftmost lane when the collision occurred, see id. at 23:9-22, and that her speed was "at least 35" miles per hour when she collided with Plaintiff, see id. at 25:19-22. Additionally, Defendant testified that she could not see why Plaintiff had braked. See id. at 24:7-15.

Seeking to recover damages for injuries suffered as a result of the rear-end collision, Plaintiff filed this negligence action against Defendant in state court. See Complaint (Doc. 2) (originally filed in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, on August 15, 2018). On December 27, 2018, Defendant removed the action to this Court. See Notice of Removal (Doc. 1). After conducting some discovery, Plaintiff filed the Motion seeking entry of partial summary judgment on the issue of Defendant's negligence. See generally Motion. Defendant opposes the Motion. See generally Response.

## II.     Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.
> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact

-3-

reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining

---

and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.
Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

In citing to Campbell, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves, 52 F.3d at 921 (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III.   Analysis

Plaintiff moves for partial summary judgment as to Defendant's negligence in this case based on the state law presumption that the rear driver in a rear-end collision was negligent. See generally Motion.[4] Florida courts have long recognized a rebuttable presumption that the rear driver in a rear-end collision was negligent, and that such negligence caused the collision. See Gulle v. Boggs, 174 So. 2d 26, 28 (Fla. 1965) (noting that the "so-called rebuttable presumption rule arising out of [a] rear-end collision" is "well established in Florida"); see also Clampitt v. D.J. Spencer Sales, 786 So. 2d 570, 572-75 (Fla. 2001). The Florida Supreme Court has explained that Florida courts recognize this presumption out of necessity because a driver who has been rear-ended knows that the other driver rear-ended her but usually does not know why. Clampitt, 786 So. 2d at 572-73 (citing Jefferies v. Amery Leasing, Inc., 698 So. 2d 368, 370-71 (Fla. 5th DCA 1997)). The presumption is rebuttable, and the burden is on the defendant to put forth evidence "which 'fairly and reasonably tends to show' that the presumption is misplaced." Id. at 573 (quoting Gulle, 174 So. 2d at 28-29).

To rebut the presumption of negligence, a rear driver must provide "a substantial and reasonable explanation as to why [she] was not negligent." See Jefferies, 698 So. 2d

---

[4] This case is before the Court based on its diversity jurisdiction. See Notice of Removal (Doc. 1) ¶ 5; see also Defendant's Response to January 2, 2019 Order (Doc. 7); Declaration of Lola Judith Jones (Doc. 10); Notice (Doc. 12). As such, the Court applies the substantive law of the forum state, Florida. See Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011).

at 371; see also Tozier v. Jarvis, 469 So. 2d 884, 886 (Fla. 4th DCA 1985). Florida courts "have generally recognized four situations to rebut the presumption: '(1) a mechanical failure in the rear driver's vehicle, (2) the lead driver's sudden stop, (3) the lead driver's sudden lane change, and (4) the lead driver's illegal or improper stop.'" Fonger v. Nall, 286 So. 3d 332, 333 (Fla. 5th DCA 2019) (quoting Douglas-Seibert v. Riccucci, 84 So. 3d 1086, 1088-89 (Fla. 5th DCA 2012)). With regard to the "lead driver's sudden stop," "it is well established that a sudden or abrupt stop, without more, will not rebut the presumption." Id. at 333; see also Clampitt, 786 So. 2d at 575. Rather, "[i]t is a sudden stop by the preceding driver at a time and place where it could not reasonably be expected" that rebuts the presumption. Clampitt, 786 So. 2d at 574 (quoting Pierce v. Progressive American Ins. Co., 582 So. 2d 712, 714 (Fla. 5th DCA 1991)). This is so because "[e]ach driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance." Id. at 575 (citing section 316.0895(1), Florida Statutes (1993)).[5] Thus, "[t]o rebut the presumption of negligence in a rear-end collision through evidence of the lead driver's sudden stop, the rear driver must show that the stop was 'not expected, i.e., abrupt and arbitrary, and in a place not reasonably expected.'" Fonger, 286 So. 3d at 334 (quoting Wright v. Ring Power Corp., 834 So. 2d 329, 331 (Fla. 5th DCA 2003) (internal citations omitted)). "[W]here the presumption of rear-driver negligence is rebutted, the legal effect of the presumption is dissipated, and the presumption is reduced to the status of a permissible inference or deduction, from which the jury may, but is not required to, find negligence on the part of the rear driver." Birge v. Charron, 107 So. 3d 350, 361 (Fla.

---

[5] Florida Statute section 316.0895(1) provides in relevant part: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway."

2012); see also Tozier, 469 So. 2d at 886 ("Once the presumption is overcome, it vanishes; the jury is not instructed upon it.") (quoting Gulle, 174 So. 2d at 29).  However, if left unrebutted, "the presumption requires a directed verdict reflecting the rear driver's negligence." Fonger, 286 So. 3d at 333.

Here, it is undisputed that Defendant rear-ended Plaintiff's vehicle, and thus the presumption is applicable in the first instance.[6]  See Clampitt, 786 So. 2d at 572-75. Nevertheless, Defendant contends that disputed factual issues as to the condition of traffic and the events immediately before the accident preclude entry of summary judgment.  See Response at 5, 7-8.  Specifically, Defendant asserts that her testimony "differ[s] from that of Plaintiff and Plaintiff's father," and argues that Plaintiff's sudden and unexpected stop contributed to the collision.  See id. at 1, 3, 5, 8.  Additionally, Defendant maintains that the incident occurred on a highway without "busy intersection[s]," and that the time of the collision is not itself determinative.  See id. at 8.  Ultimately, the dispositive question is whether Defendant has put forth sufficient evidence to rebut the presumption of her negligence.  See Fonger, 286 So. 3d at 334.  Upon review of the record, the Court concludes that she has not.

First, the Court observes that Defendant does not suggest much less point to any evidence that Plaintiff, herself, was negligent and that such negligence caused or contributed to causing the collision.  See Birge, 107 So. 3d at 361 (holding that "because rear-end collision cases are substantively governed by the principles of comparative fault…where evidence is produced from which a jury could conclude that the front driver in a rear-end collision was negligent and comparatively at fault in bringing about the collision,

---

[6] Indeed, the parties do not dispute that the presumption applies, rather they dispute whether Defendant has rebutted the presumption. See generally Motion; Response.

the presumption is rebutted"). Next, the court notes that Defendant fails to present facts showing a "substantial and reasonable explanation as to why [she] was not negligent." Jeffries, 698 So. 2d at 371. Viewing the facts in the light most favorable to Defendant, her description of the events leading up to the collision supports rather than rebuts the presumption of negligence. Indeed, Defendant testified that as she changed lanes, she continued to press the accelerator, and apparently only realized she lacked room to stop after she saw Plaintiff's brake lights. See Defendant Dep. at 21:8-11, 23:16-22. By her own testimony, Defendant's actions appear to conflict with Florida law requiring a "reasonable and prudent" following distance based on due regard for the speed, traffic, and condition of the highway. See Fla. Stat. § 316.0895(1); see also Clampitt, 786 So. 2d at 575 (noting "the law requires all drivers to push ahead of themselves an imaginary clear stopping distance or assured stopping space or adequate zone within which the driven vehicle can come to a stop.") (quoting Lynch v. Tennyson, 443 So. 2d 1017, 1020-21 (Fla. 5th DCA 1983) (Cowart, J., dissenting)). Despite this, Defendant contends that issues of fact preclude summary judgment on the issue of negligence.

Although Defendant does not succinctly articulate her argument under the applicable legal framework, her position generally can be summarized as follows: Plaintiff stopped abruptly, and such stop was unexpected because it occurred on an open highway in a disputed amount of traffic, which is material to the question of negligence. See generally Response. Viewing the evidence in the light most favorable to Defendant, Plaintiff's stop may well have been abrupt, but Defendant points to no evidence supporting a conclusion that the stop was arbitrary or that it occurred at a time when it could not reasonably be expected. To rebut the presumption of negligence, Defendant must show

that Plaintiff's sudden stopping was unexpected, i.e., abrupt and arbitrary, and occurred at a time and place where it could not reasonably be expected. See Clampitt, 786 So. 2d at 574; Fonger, 286 So. 3d at 334.  This Defendant has not done.

Defendant described the traffic when she changed lanes and collided with Plaintiff's vehicle as "flowing normally," and recalled that the traffic had been moving at speeds of "50 or 40" when she first began to change lanes.  See Defendant Dep. at 21:5-7, 22:7-20. Despite Defendant's contention that her testimony conflicts with Mr. Bruton's, he likewise testified that initially "traffic was good," i.e., "moving."  See Bruton Dep. at 9:17-24, 10:11-15.  However, Mr. Bruton also testified that before the collision, the traffic preceding Plaintiff had slowed to a relative standstill and was "inching forward," and further testified that this general slowdown was the reason for Plaintiff's braking and maintaining a low speed.  See id. at 11:17-12:4, 13:14-22.  Critically, Defendant presents no evidence to refute Mr. Bruton's description of the traffic preceding Plaintiff and that it was the cause of Plaintiff's slowdown.  See generally Defendant Dep.[7]  Indeed, rather than attempting to contradict Mr. Bruton's testimony, Defendant admitted that she could not see why Plaintiff had braked. More importantly, when asked what she believed led to the collision, Defendant responded, "the unexpected stopping of all traffic."  Id. at 24:7-15, 27:19-22 (emphasis added).

Defendant's testimony that she could not see why Plaintiff braked does nothing to contradict Mr. Bruton's specific testimony that Plaintiff braked due to the slowing of traffic ahead of Plaintiff.  C.f. Cordle v. Mims, No. 3:13-cv-133-J-34JRK, 2014 WL 12782172, at

---

[7] The Court notes that Defendant bases a portion of her opposition to Plaintiff's Motion on the November 11, 2015 Deposition of Trooper Brianna Onorato (Doc. 58; Onorato Dep.).  See Response at 4-5.  Specifically, Defendant cites the Onorato Dep. to show that "**both** the Plaintiff and Defendant's vehicles were slowing." Response at 4 (emphasis in original).  However, the Court finds this testimony to be immaterial to the dispositive question of whether Plaintiff's braking was abrupt and arbitrary.

-9-

\*5 (M.D. Fla. May 28, 2014) ("[Rear driver]'s testimony that he did not see [lead driver] does not equate to evidence that [lead driver] suddenly pulled out in front of [rear driver]."); Clampitt, 786 So.2d at 575.  Therefore, even if the evidence regarding the pace of traffic around Defendant is in dispute, there is no genuine dispute as to the fact that the traffic preceding Plaintiff had stopped, and that Plaintiff braked in response to such traffic.  The lack of a genuine dispute is highlighted by Defendant's own testimony that, based on her observations, the collision occurred due to "the unexpected stopping of all traffic."  See Defendant Dep. at 27:19-22 (emphasis added).  Although Defendant characterizes the "stopping of all traffic" as "unexpected," this characterization is insufficient to create an issue of fact for trial.  No reasonable juror would conclude that a driver stopping because all traffic preceding her was stopping was in any way unexpected or arbitrary.

The facts of this case are readily distinguished from those in Eppler v. Tarmac America, Inc., 752 So. 2d 592 (Fla. 2000).[8]  In Eppler, the vehicles involved in the crash were initially stopped in a line at a stoplight.  Id. at 595.  As the light turned green, the vehicles accelerated forward in an orderly fashion in bumper-to-bumper traffic, until the lead driver suddenly braked for no apparent reason, causing a rear-end collision.  Id.  The Florida Supreme Court found that these facts overcame the presumption because the lead car had arbitrarily come to a sudden stop in a place or situation where such a stop would not be reasonably anticipated.  Id.

Here, rather than stopping for "no apparent reason," as did the lead driver in Eppler, the only evidence regarding Plaintiff's reason for stopping came from Mr. Bruton, who testified that Plaintiff braked due to the slowdown of traffic.  Thus, the undisputed testimony

---

[8] See Debord v. G & S Material Serv., Inc., No. 3:07CV365/LAC, 2010 WL 680529, at \*2 (N.D. Fla. Feb. 22, 2010) (describing Eppler as "the seminal case in which the presumption was found to be rebutted.").

-10-

establishes that Plaintiff braked in response to the general slowdown of traffic. Evidence of a lead driver's appropriate and expected response to activity on the road, even if sudden, is insufficient to rebut the presumption of a rear driver's negligence. See Sorel v. Koonce, 53 So. 3d 1225, 1228 (Fla. 1st DCA 2011) (reversing verdict in favor of rear-driver defendant and directing entry of verdict in favor of lead driver in accordance with the presumption because "the stop or deceleration was not arbitrary or irresponsible as in Eppler, rather, it was an appropriate response to activity on the road, which [the rear driver] should have reasonably expected"). Indeed, as one court stated, "contrary to Defendant's argument, the case law is clear: to rebut the presumption of negligence a defendant must show more than a sudden stop caused by the regular flow of traffic." See Gangi v. United States, No. 1:17-CV-62083-KMM, 2018 WL 6261509 (S.D. Fla. Aug. 31, 2018) (emphasis added). In Gangi, the rear-driver defendant relied on the deposition testimony of the lead-driver plaintiff, who testified that the sudden slow of traffic surprised him and he stopped abruptly to avoid colliding with the car in front of him, which had likewise stopped suddenly. See id. at *1. The defendant argued that the plaintiff's admittedly abrupt stop was enough to rebut the presumption. The court disagreed and granted partial summary judgment in favor of the lead-driver plaintiff on the issue of negligence. In doing so, the court concluded that the defendant failed to present evidence that fairly and reasonably overcame the presumption of negligence. Id. at *1-2.

Here Defendant argues that the "alleged incident occurred on a highway, not a stop sign, traffic light, or other type of busy intersection," seemingly to suggest that the Plaintiff's braking occurred in a place not reasonably expected. See Response at 8. However, as in Gangi, this contention is unavailing. Regardless of the fact that the incident occurred on a

highway, the record demonstrates that Plaintiff braked in response to a general slowdown of all traffic. In such a circumstance it cannot be said that the lead driver's braking was unexpected such that the presumption of the rear driver's negligence is rebutted. See Sorel, 53 So. 3d at 1228; Gangi, 2018 WL 6261509 at *1.

In sum, Defendant puts forth no evidence that remotely suggests that Plaintiff acted negligently. Moreover, Defendant has presented no evidence that Plaintiff's braking—even if abrupt—was also arbitrary. To the contrary, on the record before the Court, Plaintiff's braking in response to the slowing of all traffic, even on a highway such as I-95, can only be described as reasonable or appropriate, certainly not arbitrary. As such, Defendant, the rear driver, has failed to rebut the presumption of negligence that the rear driver in a rear-end collision was negligent. Plaintiff's Motion is therefore due to be granted and partial summary judgment entered in favor of Plaintiff on the issue of negligence.[9]

Accordingly, it is

**ORDERED**:

Plaintiff's Motion for Partial Summary Judgment (Doc. 56) on the issue of Defendant's negligence is **GRANTED**.

**DONE AND ORDERED** in Jacksonville, Florida on June 16, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc27
Copies to:
Counsel of Record

---

[9] Even assuming a genuine dispute as to the degree of traffic congestion, the Court reiterates that such a dispute would be immaterial where, as here, the rear driver's testimony confirms that the lead driver braked in a reasonably anticipatable response to preceding traffic's general slowdown.